Good morning, Your Honors. May it please the Court, Deborah Gonzales from the Federal Public Defender's Office on behalf of Appellant Mr. Cruz Noel Quintero. I plan to reserve four minutes for rebuttal and I will watch my clock. Your Honors, given the District Court's three erroneous rulings in this case, it's not surprising that the jury convicted Mr. Quintero of distributing Sentinel resulting in death, a count for which he is now serving a 24-year sentence. This morning, I wanted to talk about why those three rulings were wrong and deprive Mr. Quintero of a fair trial. I would like to talk about those issues in the following order. First, the character evidence, second, the misjoinder, and finally, the warrant. Regarding the character evidence, Your Honors, there were two major issues with this so-called 404B evidence that Mr. Quintero had sold diluted drugs to people in Minnesota and to this individual named Dave Scott. The first is that it was pure character evidence, which is not admissible under Rule 404A or 404B1. Specifically, the government argued that evidence that Mr. Quintero had previously sold diluted drugs showed that he had a, quote, dangerous or reckless character trait and that on the day in question, he acted in conformity with those character traits either by dangerously selling Ms. Molino fentanyl, passing it off as cocaine, or recklessly grabbing a baggie of fentanyl, believing that it was cocaine. That is pure propensity evidence. It's not allowed under Rule 404A and it did not satisfy an exception under Rule 404B2. Mr. Quintero, again, this evidence also, I'm sorry, was not admissible under Rule 403. The probative value was low because it did not actually even show that he was reckless, even if that had been admissible character evidence, because prior sales of diluted product do not demonstrate that you then engaged in a sale of a pure product. And it also didn't demonstrate dangerousness, again, even if that were allowed under Rule 404, because it didn't, it wasn't, for example, evidence that Mr. Quintero had previously sold one drug, passing it off as another. So it had very low probative value. It was not admissible for that purpose and it was highly prejudicial. Why wasn't it relevant to the point of this person who sells drugs, sells things that are mixed together? Because this case, Your Honor, was a sale of 100% pure fentanyl. Well, it turned out that way. Yes. But the defense was that he didn't do it, that he didn't have any fentanyl. Correct. The defense was that he had sold cocaine. So there wasn't even any evidence that in the past he had, for example, mistakenly sold one product, calling it another, or that he had sold, you know, that he had cut even drugs with fentanyl. And so what the government did was they took these prior acts and they said, these acts show that he's reckless. He runs a dangerous and a reckless business. And therefore, on this day, he was dangerous and reckless. I still come back to, I'm not quite sure I'm following why it wouldn't be relevant to show that this person sells drugs to people represents that they're one thing when they're not. Because there was no indication he had ever tried to pass off, for example, cocaine or methamphetamine as one kind of drug. But our authority says that we don't need an exact match of substances for it to be relevant? You don't need an exact match, but the prior act does have to show. For example, if the government were going to introduce this to show knowledge, it would need to show that the knowledge gained from the prior act was the same type of knowledge that they were trying to show in this case, which it didn't. And the prior acts here were selling adulterated drugs. And the act in this case was selling pure fentanyl. So I don't think that there was any sort of propensity-free chain of reasoning, Your Honor, that would have allowed the government to introduce this under Rule 404. If he had, in fact, sold drugs in the past that were diluted, that would not show that with any propensity-free way, that on the day in question he sold a drug that wasn't what he said it was. It was also highly prejudicial, Your Honor. The risk of unfair prejudice was very high because this was a really tragic case because someone passed away, obviously, but the evidence of the 404B evidence the government argued at trial demonstrated that he had been running this operation recklessly for over a year and that he had risked perhaps hundreds if not more, you know, thousands of lives by engaging in this conduct over the course of a year. So it was highly prejudicial. And the government can't rebut the presumption of prejudice that applies because this was really important evidence for them. It filled in a gap in their case, which was that Mr. Quintero, you know, despite the piles of evidence that they had in this case, that he had been drug trafficking for over a year, there was no evidence that he had ever sold fentanyl or cut any drug with fentanyl before. So this was a huge hole in their case, and it was the heart of the defense. The jury instruction was not sufficient because the jury instruction here allowed, it just allowed the government to use it for every purpose under Rule 404. It didn't even explain how the government actually was using it in this case, which was as character evidence. And it was confusing because the government's entire closing and rebuttal closing was based on the idea that Mr. Quintero was reckless and dangerous, and therefore that's what had happened in this case, that this was the natural and probable consequence of the way that he, the character way that he was running his drug enterprise. Before we run out of time, would you switch gears to the misjoinder issue? Yes. Your Honors, the first problem that the court made, the first error that the district court made with respect to misjoinder, was it concluded, it appears to have accepted the government's legally erroneous theory that two groups of counts can be joined, even though they don't satisfy a method of Rule 8 joinder as to each other, because they each somehow independently satisfy a method of Rule 8 joinder as to a third group of counts. That's simply not allowed. There is no magic fourth method of joinder under Rule 8A. 8A provides for three, and these groups of counts, specifically I'm talking about the firearms and the fentanyl distribution count, did not satisfy a method of Rule 8 joinder as to each other. The government waived any argument that it did, and Mr. Quintero was prejudiced by that as well. Well, I think that's the key for you, right? I think the harder argument for you is to show actual prejudice, that the jury's verdict was impacted by the joinder of these claims. I don't think so, Your Honor, respectfully. I think that when we're talking about specifically and especially the firearms offenses, that was incredibly prejudicial for Mr. Quintero. Mr. Quintero's fentanyl distribution count, in fact, did not, there's no evidence that that involved a gun, right? That offense occurred in the parking lot of the hospital where he was working at a nurse. It was a small hand-to-hand transaction between him and a friend of his and colleague. Sure, you have the strongest argument that there's no connection between the distribution and the firearms charges. I think the drug premises charge is much harder for you to say, shouldn't have been joined with distribution. But I give you, the gun charge and the distribution charge seem to be different, and maybe not joinable. But in order to have a reversible error, you have to show prejudice. So why is it that we should think that the jury was more likely to convict him on distribution because they were hearing about guns? Because, so in this court's case in United States v. Terry, the court recognized that it can be prejudicial for a jury to hear that a drug dealer carries a gun. And in Mr. Quintero's case, these firearms offenses allowed in evidence of 15. I think there were 15 guns. And so we're not just talking about one. What evidence did the jury see that they wouldn't have otherwise seen? Can you be specific? Yes, Your Honor. They saw. Seen or heard, either way. I'm trying to find the exact pinpoint site, but there was evidence of 15 guns. They were machine guns, AR-15s, AK-47s, unregistered short-barreled rifle, information about how much Mr. Quintero, quote, loves guns, his familiarity with guns, his attempt to buy a silencer. There were photographs of Mr. Quintero that the jury was shown from his phone, including one that I will find the pinpoint site for. But I was, you know, preparing for today's argument. I was looking at it, and it's a pretty scary photograph of Mr. Quintero in some sort of, like, scary ski mask holding what looks like a machine gun. I've seen that photo. Was that admitted? It was admitted, Your Honor. I believe it was Exhibit 160, but I'll get the pinpoint site for the court. So none of those things would have been admissible at a separate trial of the fentanyl distribution company. I mean, for the prejudice argument to work, it seems to me we have to conclude that the jury would have just been inflamed by the gun activity. And then, oh, he's just a really bad guy, and we want him off the streets, and so we're going to convict him of the whole sheet of things that were presented to us. That's the theory you're running with? It is, Your Honor. And I would note that there's a presumption of prejudice that the court has found misjoined, or the government has to rebut that presumption. And, yes, these were, you know, under Terry, even one gun. And here we're talking about 15. So one of the factors that we think about is, is there any possibility that there would have been overlap of evidence had they been tried separately? So what tells us that if the distribution charge had been tried by itself, or at least without the gun charges, that this jury never would have heard about gun activity at all? That seems difficult to accept for me. I don't think that guns were relevant to the fentanyl distribution count because there was no indication that he brought, you know, a gun to the crime. Sure, but wouldn't the government have been able to explain why they were even able to investigate him and the search and all of that stuff? And that would have brought in at least some of the gun story, maybe not all of it. Not if it was prejudicial, Your Honor. And I think it was, and especially the extent of gun testimony that was allowed in this case. Counsel, isn't it your burden now to show prejudice here? No, Your Honor. That the jury would have come to a different conclusion? Your Honor, if we have shown misjoinder, which I think we have, then it's the government's burden to rebut the presumption of prejudice that applies by showing it's more probable than not that a material affected the verdict. And you believe that did not occur here? Correct. And one other reason I haven't mentioned is because the evidence of gun possession and the 924C were admittedly very strong in this case. I will get up here and say that because it was. But there was a major hole in the government's case with respect to whether Mr. Quintero had actually given Ms. Molino cocaine or fentanyl. Sure. I mean, I agree with you that the evidence, the body of evidence on those different charges had a different weight, we'll say. But we have to be able to say that because the gun charge was likely going to be proven that they're necessarily going to convict him of this other thing. And that's the part that I'm having a hard time putting all the pieces together because we've got a situation where, as you've already described, the evidence that relates to those two charges is pretty separate, right? The jury's not going to be confused about evidence that relates to this is also going to relate to that. These are two separate things going on. And then the possibility that even if they had been tried separately, at least some indication of gun activity was coming in anyways. With respect to the confusion, Your Honor, I think, no, there was not. Well, I don't agree that it was not confusing for the jury to hear the gun evidence. The jury instruction that was given in this case was that you must consider all these counts separately. But there was no instruction to the jury about what came in as for what aspect of the guns to be considered. But why would they need that when the elements of the crime make it pretty clear? For this charge over here, there's no reference at all to any sort of gun activity or possession of guns or presence of guns. And over here, there is. Well, can't we just assume the jury can read and understand that these two crimes have different elements? I don't think so, Your Honor, because I think the way that the government got up in closing and presented this evidence was Mr. Quintero is a high-level drug dealer. He guards all of his stuff with machine guns, and he's very scary, and he's a reckless person. And on this day, his entire business crumbled down because of what he did. So the government was intertwining the evidence of the firearms with the fentanyl distribution count. But I think the bigger point for the firearms is how sort of salacious they were. The fentanyl distribution count was obviously tragic, but the firearms were very scary too. So it's not as much that the jury couldn't keep those separate. And with respect to the drug premises count, this court has said that when counts are misjoined, even though they are similar, that that raises the risk of prejudice. So there was certainly a lot of prejudice from the drug premises count as well. And specifically, as I mentioned earlier, the fact that this was kilogram quantities of diluted product, which the government argued to the jury despite not having evidence of it, that this was dangerous product and risked hundreds of lives over the course of a year, was extremely prejudicial to Mr. Quintero on the fentanyl distribution count. If there's nothing else at this time, I would like to reserve the remaining time for rebuttal. Just while you are thinking about it for rebuttal, I mean, as a formal trial judge, I used to think about this a lot in terms of like if you had any sort of whiff of a claim about, you know, child sex abuse or something, then yes, like prejudice, right? Jumps to mind. And we're really concerned about that. Not so much in my mind about a drug charge or I'm sorry, a gun charge. So do you have authority on the federal side to say that? And again, you don't have to answer me right this minute about a gun charge sort of raising that automatic concern about prejudice. That would be your honor in the United States versus Terry, which is which was a case where there was evidence of a drug distribution on one day. Officers went to execute a warrant and they found firearms. And Mr. Terry was charged in a joint indictment. And this court held that the counts were misjoined and specifically said that a jury would be would be more, excuse me, that it would be prejudicial for the defendant to hear that a drug dealer carries a firearm or is associated with firearms. So that's United States versus Terry. And the evidence of drug of firearms in this case was much more. Counselor, you're over time. Thank you. For planning purposes, when you come back, we'll put a minute on the clock. You bet. Good morning, Your Honors. May it please the court. Sariya Bahadur on behalf of the United States. So I will focus on Joinder, which is where the court just left off. But I want to make one correction of the record. The government did not call this defendant reckless and dangerous. In the closing argument, the government explicitly said that it was he operated a reckless and dangerous business. And that is a fair inference from drug trafficking business. There's not a reference that the defendant himself was reckless or dangerous. And just to step back, this case is not a one off deal with Brianna Molina. It is about the defendant's drug trafficking business and how he operated it for nearly a year. And that particular account was one example of that business. So when there is a discussion in the closing talking about the counts altogether, it's because that was the case. That was the crime. The defendant operating a drug trafficking business and the guns and the drug deal all being interwoven together. But on that, was the jury ever told specifically by counsel at argument or by the court the permissible use for the for the 404B evidence? For the 404B evidence? In the jury instructions, the court did instruct them that the, are you talking about the Dave Scott and the Minnesota evidence? Yes. That it would, it is direct evidence of the drug premises count and it is 404B evidence, knowledge, intent, motive, opportunity, lack of misdemeanor. So it gave the whole long list. It gave the list. And it didn't actually hone in the jury about like this is how you can use this evidence. Yes. And there was a discussion with the defense counsel about this jury instruction. There was no objection in terms of limiting or narrowing the purposes. It simply was, we had that discussion and we followed the 404B model instruction from this court. And plus, that is what Vaux, in Vaux, the court says that prior drug trafficking activity is admissible, knowledge, intent, motive, opportunity, absence of mistake, and lack of accident. So the court did not abuse its discretion when it admitted that evidence. And it certainly did not when it offered a limiting instruction and wanted to ensure that the jurors were careful in considering the Dave Scott and Minnesota evidence. And to be clear, the government did not mention the Dave Scott or the Minnesota evidence when it marshaled through the proof relating to the drug distribution count. So when the defense counsel says that there's gaps in the government's case, we were not filling gaps. We do not subscribe that there were gaps, but we were not relying on the Dave Scott or the Minnesota evidence with respect to the drug distribution count. But going back to Joinder, if I may, I want to make sure that the inquiry before the court is a Rule 8a inquiry. It's whether these counts may be permissibly joined together under one of Rule 8a's three requirements. It is not a Rule 14 inquiry. It is not whether hearing guns is going to prejudice the jury against the defendant because it's also being told with drug counts. It is a Rule 8a inquiry. Those considerations come in on the prejudice analysis.  Once the court decides, if the court were to say that there was a misjoined jury, then we look at prejudice. But even then, when the court laid out the factors to consider in prejudice in Lane and as they were then applied in Jawara, it doesn't actually take a look at is one count prejudicing the other. They ask if there was a limiting instruction, which there was. And when there was a limiting instruction in Jawara, this court said that militates against a finding of prejudice. It then asked, was there substantial proof proving each of the counts independent? And there absolutely was. I think the defense just conceded there was substantial proof of the drug premises counts as well as the firearm counts. And there was substantial proof of the drug distribution count. Then the court asked, I think, is there going to be cross-admissibility, which is what you were honing in on with defense counsel. And there absolutely would be cross-admissibility. In any case involving the drug counts, the drug premises charge is going to bring in the firearm counts. And that's because, well, one, for two reasons. One, there is case law that says firearm possession does show knowing involvement in the drug trade. That's in Butcher, which we do cite in our brief. And in Butcher, they rely on a case called Crespo for that exact point. But two, there would be cross-admissibility because in any drug deal case, the government would seek to admit the full picture, the full story of how we then executed a search warrant and found drug trafficking paraphernalia. All of that drug trafficking paraphernalia absolutely goes to the defendant's state of mind for a drug deal. But more importantly, the firearms are not just kind of separate in a safe, in a car, in a shed. They were interwoven with the defendant's drug trafficking paraphernalia. You had a gun with a scale and with baggies. You had guns- Are you talking now about where they were located? I am, but I'm saying that because in any case involving the drug trafficking, in any case involving a drug deal, if you had the drug premises count coming in, we would be seeking to admit not just the drug trafficking paraphernalia but also the gun evidence. That part I understand. I'm just trying to interject a question where you said the guns were interrelated or interwoven. Are you talking about proximity-wise now where they were seized? Absolutely. Proximity-wise, purpose-wise, the whole, I mean, he was protecting his business with these firearms. But opposing counsel's point is that that's not true of this charge. For this charge and this very tragic distribution of fentanyl, these were two co-workers. They were friends. I don't think there were any allegations that there were drugs involved in the handoff in the parking lot. Guns involved, you mean. What did I say? You said drugs. Oh, sorry. That's okay. Guns involved. Right, but if we were to have a standalone trial on the drug deal, we would absolutely have sought to, which we don't even believe that would be appropriate because we do believe the drug counts are properly joined. But say we were to have just one trial, we would absolutely seek to admit the drug trafficking paraphernalia, which under this court's four- What about the guns? It's a lot of guns. It's some photos that were pretty shocking. What about that? That's the strongest- We would seek to admit evidence of the guns. And we do think there's case law that says evidence of firearms does show knowing involvement in narcotics. And this is just one- That's the problem. Counsel, he didn't deny distributing the narcotics. He just said, I thought it was cocaine and it was fentanyl, right? Well, right, but all of this does show an intimate familiarity with narcotics. And the government's point at trial was when someone is knowledgeable about the drug business, they're going to know that, one, that they use adulterants to stretch their product. Two, drugs can have adulterants in it even when they're selling. And that was part of our point. But there weren't adulterants here. That's the problem, right? Her argument is that wasn't the case here. This was 100% fentanyl. But it is absolutely an adulterant when you ask to buy one drug and you get another one. This is not a high- I think in the brief they talk about this being a high-quality sale. I do not think in any stretch of the imagination that it is a high-quality sale when someone asks, I would like to buy cocaine, and then they end up with fentanyl on their parking spot. Well, this goes back to what I think you very said right when you came to the podium, which is that you pushed back on the notion that you said that this was propensity evidence about his recklessness, that the business that he was operating wasn't careful. Absolutely. And that's a fair inference from just drug trafficking from the record itself. I know we're kind of mixing topics here, but that does kind of speak to how there's just a lot of cross-admissibility, which gets to how the misjoinder was not going to prejudice the defendant. But that was the highly probative value of the Dave Scott and Minnesota evidence, which I should also correct the record on that as well. This is a limited amount of evidence. The Minnesota evidence was not 17 exhibits. If you actually look at the index, there's not even 17 exhibits. There's some gaps in the exhibit numbers. There were only six exhibits. They were admitted actually through one witness, and in total the Minnesota evidence took up 113 pages of transcript out of a 1,000-page jury trial. The Dave Scott evidence, five messages, three shown to the jury, and again, none of this evidence was mentioned when the government was marshalling through the proof of the drug distribution count. The drug distribution count itself was incredibly strong, and I do want to point out this was not a case that relied on one witness. If you look at Breonna Molina's testimony, it is heavily punctuated with text messages because there was a significant amount of digital evidence. Just the logic of the couple waiting for 45 minutes to an hour demonstrates that they had no other cocaine. There's a text message that says, if we don't buy the cocaine, if not, oh well, no coke. You had the victim calling the defendant 20 minutes after finding her boyfriend dead. You then have the victim deleting, sorry, Breonna Molina deleting only messages with the defendant. You have the 911 call where she says, Sean Frick just used cocaine, which is again what they bought from the defendant, and then you have the photographs of the pile of white powder pictured as if it was cocaine, which is what the couple believed that they were doing up until Sean Frick died. So in terms of, I know I kind of skipped around, but I do think the misjoinder, if the court wants to go straight to whether there was any prejudice under the factors of Jawara and Lane, there was no prejudice here. Terry, his very distinguishable 13 days had passed between the counts. They were in completely different counties. And, of course, as the court said, there was no overlapping evidence here. We had at least four witnesses talking about the overdose and the gun counts. As far as the 404B in Minnesota evidence, any of that would also be harmless for all the reasons I just listed. And unless the court has any questions about the Fourth Amendment or any other questions, we would ask that the court affirm the convictions in this case. Judge Smith, do you have questions? I have no questions. I think we've asked them all. Thank you, Your Honor.  Thank you, Your Honor. I will try to organize my thoughts here. The opening brief goes through the evidence as to Minnesota, and Dave Scott, the court, can go back and look at those exhibits in the record and see how long it was. Regarding the strength of the government's case on the drug distribution count, the critical fact of whether the fentanyl that Mr. Frick ingested came from Mr. Quintero, the only evidence on that at trial was Ms. Molino's testimony. So that's where I come saying there was a big gap in the government's case and there was a disparity in the strength of those cases. And that was important because there were reasons to believe that Mr. Quintero would not have sold his friend pure fentanyl, first that it was his friend. Fentanyl is four times as expensive as cocaine. In all of the massive amount of evidence from eight cell phones and an informant who flew in from Minnesota and the wiretaps that the government engaged in in Minnesota, there was no evidence that Mr. Quintero had ever dealt fentanyl before. Is it relevant to this analysis? As I was thinking about this case, I was trying to figure out, am I supposed to do a sufficiency of the evidence analysis and try to figure out, did the jury just make a decision that was not supported by the evidence to get there? No, Your Honor. It is not a sufficiency of the evidence. It's a much more lenient, from the defense perspective, prejudice standard. It's whether on the 404B, it's whether I think it had a substantial and injurious effect on the verdict. And, excuse me, under Ms. Joinder, whether it was more probable than not that it materially affected the verdict. And here it did. Just one last point. The photograph I was discussing specifically is at ER 1534-35. I see that I'm almost out of time. You are. The clock is going back up. Thank you, Your Honor. I would just ask the court, you know, this was obviously a very serious case. Mr. Quintero is serving 24 years, and we need faith in this verdict. And on these facts, we don't have it. Thank you very much. Thank you all. We'll take that case under advisement. We're going to stand in recess for about five minutes, and then we'll come back for the last arguments on the calendar.  Court stands in recess for five minutes.
judges: SMITH, CHRISTEN, FORREST